833 F.2d 1023
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Lawrence D. HOFFMAN, Petitioner,
v.
VETERANS ADMINISTRATION, Respondent.
 No. 87-3283.
 United States Court of Appeals, Federal Circuit.
 Oct. 14, 1987.
 
 Before MARKEY, Chief Judge, RICH, Circuit Judge, and BALDWIN, Senior Circuit Judge.
 RICH, Circuit Judge.
 
 DECISION
 
 1
 The final decision of the Merit Systems Protection Board (Board), Docket No. CH07528610439, sustaining the removal of the petitioner is affirmed.
 
 OPINION
 
 2
 Petitioner's initial contention is that there was insufficient evidence to find that he actually made the statements to patients alleged to constitute his misconduct. In this regard, petitioner's only argument is that his denials were more credible than the testimony of the several opposing witnesses. The Administrative Judge's (AJ's) determinations on the credibility of witnesses giving conflicting testimony will not be overturned absent clear abuse of discretion. Hagmeyer v. Department of Treasury, 757 F.2d 1281, 1284 (Fed.Cir.1985); Griessenauer v. Department of Energy, 754 F.2d 361, 364 (Fed.Cir.1985). We have reviewed the record and conclude that the AJ did not abuse his discretion in crediting the testimony of the two allegedly abused patients and the three corroborating agency witnesses, while discrediting petitioner's bald denials.
 
 
 3
 Petitioner next argues that even if he did make the statements attributed to him, those statements cannot constitute "patient abuse." This is so, petitioner asserts, because the Board applied an inappropriate evidentiary standard in this case. Petitioner asserts that Metz v. Department of Treasury, 780 F.2d 1001 (Fed.Cir.1986), sets forth an appropriate standard, and urges us to formulate a definitive evidentiary standard for patient abuse cases by analogy to Metz.
 
 
 4
 In Metz, we directed the Board to consider five evidentiary factors when deciding whether an employee had threatened his supervisors or co-workers. 780 F.2d at 1002. These factors were drawn from earlier cases dealing with threats made by employees. See Metz, 780 F.2d at 1003 n. 5 (citing cases). We have no similar guidance in the area of patient abuse, and we are not convinced that the evidentiary factors deemed relevant in threat cases are of equal importance here. Accordingly, it is not now necessary or appropriate for us to formulate a list of evidentiary factors to be considered in such cases. Our only concern is whether the Board's findings were supported by substantial evidence.
 
 
 5
 Petitioner's argument that the acts with which he was charged do not constitute "patient abuse" is misleading and lacks merit. He was charged, as set forth in the notice of proposed removal, with four specific verbal communications with patients Gilmore and Marshall. Each charge, after quoting the communication, characterized it by a statement such as "you solicited information from a patient to refer you to someone who would [or could] inflict bodily harm on another [or perform other illegal activities]" and concluded by saying "This is detrimental to the therapy of patients and such behavior cannot be tolerated." It must be remembered that the facility in which petitioner was working was in the nature of a psychiatric hospital. While it is also true that each charge also contained the statement "This constitutes patient abuse," it is unrealistic to characterize the charges as merely asserting "patient abuse" without more, thus setting up a straw man for the purposes of argument to the effect that petitioner did not "abuse" any patients, in the broadest sense of the term. He was charged, however, with specific conduct of a nature which the facility could not tolerate in employees dealing with patients. The meaning of "patient abuse" to the management and employees of the facility is not its ordinary meaning as is clear from the VA's MEDICAL CENTER MEMORANDUM No. 05-82-10 entitled "PATIENT ABUSE," with which petitioner admitted being familiar, section "E" of which includes:
 
 
 6
 The administrative penalty for patient abuse is removal.... Minor instances of abuse may include such acts as teasing, laughing at, ridiculing or scolding a patient. However, in certain cases these acts could be construed as being a form of major patient abuse. It is also emphasized that using disrespectful, vulgar, or "slang" expressions that are offensive to a patient's religion, race, color, national origin, sex, age, or physical handicap may also be regarded as a form of patient abuse.
 
 
 7
 Viewed in this light, petitioner's verbal communications complained of clearly fall within the agency's use of the term "patient abuse," in charging petitioner with misconduct.
 
 
 8
 The AJ found, based on unrebutted testimony, that the success of the program at the Drug Dependence Treatment Center depended in part upon the trust patients had in the staff members. It was also found that when petitioner approached the involved patients for the second time, they became concerned that petitioner might be an undercover police officer trying to entrap them or trying to get evidence to use against them or their former associates. The AJ found that this would have "a serious detrimental affect [sic] on the patient's [sic] confidence in the Medical Center staff members and in the program as a whole." These subsidiary findings are supported by substantial evidence and they fully justify the Board's ultimate finding that petitioner's statements constituted patient abuse.
 
 
 9
 Petitioner's third assertion is that the agency committed harmful error by failing to convene a board of investigation to investigate the charges of patient abuse against him. We may assume without deciding that a board of investigation was mandatory pursuant to the agency's regulations. We conclude, however, that the error in failing to convene such a board was harmless in this case. Petitioner had the burden of showing that any procedural errors substantially prejudiced his rights by possibly affecting the agency's decision. 5 USC 7701(c)(2)(A); 5 CFR 1201.56(b)(1); Cornelius v. Nutt, 472 U.S. 648, 661 (1985); Smith v. United States Postal Service, 789 F.2d 1540, 1545 (Fed.Cir.1986). Petitioner presented no evidence to show that the evidence before the Board, if it had been presented to an agency board of investigation, could possibly have wrought a change in the agency's decision to remove him. Thus, any error in this regard was harmless.
 
 
 10
 Petitioner summarily argues that the agency also violated its own procedures "by failing to advise petitioner of his Weingarten rights," citing NLRB v. J. Weingarten, Inc., 420 U.S. 251 (1975). Here again, however, petitioner simply disputes the AJ's credibility determinations, finding that petitioner was advised of his Weingarten rights. Petitioner has not shown that the AJ abused his discretion in crediting testimony other than that of petitioner.
 
 
 11
 Finally, petitioner contends that the penalty of removal was inappropriate under the circumstances of this case. He asserts that the Board's consideration of the factors set forth in Douglas v. Veterans Administration, 5 MSPB 313, 332 (1981), was inadequate. We disagree. The Board considered the relevant Douglas factors and expressly weighed the seriousness of petitioner's misconduct against the two mitigating factors which petitioner stresses most heavily before us: his substantial length of service and his past record of good conduct. The Board concluded that the seriousness of petitioner's misconduct outweighed these mitigating factors and therefore upheld petitioner's removal. We see no abuse of discretion in this determination.
 
 
 12
 Petitioner's reply brief argument that "respondent has shifted gears" is unjustified in light of the AJ's opinion which opens with the statement that petitioner "was removed ... for allegedly soliciting patients to commit illegal acts for him or to refer him to someone who would." The subsequent additional holding that this constituted "patient abuse" does not change the more explicit descriptions in the charges.